IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | CRIMINAL NO.  05-00196-WS |
| ) | |
| ERIC LAMONT JOHNSON, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court on the defendant's motion to dismiss the indictment.  (Doc. 23).  The government filed a response, (Doc. 31), and the defendant elected not to file a reply.  (Doc. 26).

The defendant argues that trial would violate both his statutory and his constitutional speedy trial rights.  He provides almost no information with which to support these allegations, and the Court relies on the government's more detailed response (to which the defendant has acquiesced by his failure to reply) to flesh out the relevant circumstances.

The defendant was indicted on June 24, 2005.  (Doc. 1).  He made his initial appearance on July 1, 2009, (Doc. 18), and his case is set for trial in September 2009.  On the face of these circumstances, there could be no violation of the Speedy Trial Act.  The 70-day period provided therein does not begin to run until the indictment is filed "or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1); *accord United States v. Wilkinson*, 170 F.3d 1040, 1041-42 (11th Cir. 1999) (period runs from when the defendant actually appears, not from when he "should have" appeared).  The 70-day period therefore began to run July 1, 2009, and the defendant's trial will occur within 70

days of that date, even without consideration of excludable time under Section 3161(h).[1] The Court therefore focuses on the defendant's constitutional claim.

On April 26, 2003, the defendant was arrested by Mobile police and charged with several offenses arising out of his discharging a firearm outside a club as he and a companion drove from the club. Witnesses identified the defendant as the shooter, and police stopped the vehicle and found the defendant in the passenger seat in possession of a firearm. The defendant gave police the false name of William Ayala. He made bond and was released the same day. (Doc. 31, ¶ 1).

On April 30, 2003, the defendant was arrested by Washington County sheriff's personnel, on a federal warrant from the District of New Mexico. The New Mexico indictment charged the defendant with, inter alia, being a felon in possession of a firearm. The defendant gave the false name of Desmond, but a comparison of photographs and tattoo descriptions sent by the United States Marshal confirmed the defendant's identity. A search of the defendant's possessions turned up a nondriver ID and a Social Security card, both using the name William Ayala. It also turned up a receipt dated April 28, 2003 from E-Z Money Gun & Pawn Shop in Jackson, Alabama to William Ayala for a Glock .45 caliber pistol. (Doc. 31, ¶ 2 & n.2).

The indictment in this case contains three counts. First, that the defendant was a felon in possession of a Smith & Wesson firearm on or about April 26, 2003 (the date of the Mobile arrest). Second, that he was a felon in possession of a Glock pistol (the firearm purchased on April 28) on April 30, 2003 (the date of the Washington County

---

[1] As discussed below, the defendant was involved in federal criminal proceedings in New Mexico from 2003 to 2008. While the defendant says he was "in custody" throughout this time, (Doc. 23, ¶ 4), he was not "serving a term of imprisonment." Thus, no obligation devolved on the government under Section 3161(j) to undertake to obtain his presence for trial or cause a detainer to be filed and the defendant to be notified of his right to demand trial. *United States v. O'Bryant*, 775 F.2d 1528, 1532 n.5 (11th Cir. 1985) ("By its terms, § 3161(j) applies to prisoners serving terms of imprisonment" and so could not apply prior to conviction).

arrest). Third, that he made false statements (that he had not been convicted of a felony) when he purchased the Glock on April 28, 2003. (Doc. 1). The United States Attorney's office opened a file on August 30, 2004. (Doc. 31, ¶ 5). As noted, the indictment was handed down on June 24, 2005.

After his arrest in Washington County, the defendant appeared before Magistrate Judge Cassady on May 5, 2003, waived an identity hearing, and was ordered detained and returned to the District of New Mexico. (Doc. 31, ¶ 3). The District of New Mexico received Rule 40 documents from this District on May 12, 2003. (*Id.*, Exhibit 1 at 4).

The defendant's criminal proceedings in New Mexico consumed a remarkable six years, much of it due to the defendant's many motions (including a post-guilty plea challenge to competency) and changes of counsel, and none of it due to misconduct or negligence of the prosecutors in this case. A thumbnail:

| | |
|---|---|
| 05-23-03 | First appearance |
| 06-23-03 | Trial set for July |
| 06-24-03 | Defendant moves to continue trial |
| 07-09-03 | Trial consequently re-set for August |
| 07-09-03 | Defendant moves for extension of time to file motions |
| 07-28-03 | Trial consequently re-set for September |
| 08-14-03 | Defendant files motion to suppress |
| 09-23-03 | Trial consequently re-set for October |
| 09-24-03 | Defense counsel moves to withdraw |
| 09-26-03 | Defense counsel moves to withdraw motion to withdraw |
| 10-15-03 | Defendant moves to continue hearing on motion to suppress |
| 10-31-03 | Trial consequently re-set for December |
| 11-17-03 | Defendant moves to continue hearing on motion to suppress |
| 01-06-04 | Trial consequently re-set for February |
| 01-27-04 | Hearing on motion to suppress |

| | |
|---|---|
| 02-12-04 | Defendant moves to continue trial |
| 02-19-04 | Trial consequently re-set for March |
| 02-25-04 | Motion to suppress denied |
| 03-10-04 | Government moves to continue trial |
| 03-15-04 | Trial consequently re-set for May |
| 04-21-04 | Defense counsel moves to withdraw |
| 04-27-04 | Second defense counsel appointed Trial continued |
| 06-28-04 | Trial re-set for August |
| 07-14-04 | Second defense counsel moves to withdraw |
| 07-14-04 | Trial consequently continued |
| 08-17-04 | Third defense counsel appointed |
| 09-14-04 | Trial re-set for October |
| 10-01-04 | Defendant moves to continue trial indefinitely |
| 10-06-04 | Motion to continue trial indefinitely denied |
| 10-21-04 | Defendant pleads guilty to Count Three |
| 11-16-04 | Defendant moves to set aside plea |
| 07-22-05 | Motion to set aside plea denied |
| 07-26-05 | Sentencing set for September |
| 09-27-05 | Stipulated motion to continue sentencing |
| 09-29-05 | Sentencing re-set for November |
| 09-29-05 | Motion for substitution of defense counsel |
| 11-04-05 | Sentencing consequently continued |
| 11-14-05 | Fourth defense counsel appointed |
| 12-23-05 | Sentencing re-set for January 2006 |
| 01-17-06 | Stipulated motion to continue sentencing |
| 02-02-06 | Sentencing re-set for April |

| | |
|---|---|
| 03-22-06 | Stipulated motion to determine competency |
| 03-24-06 | Sentencing consequently continued |
| 04-07-06 | Motion to determine competency granted |
| 07-19-06 | Defense motion for medical/psychiatric examination |
| 07-26-06 | Motion for examination granted |
| 11-21-06 | Psychological evaluation report received |
| 12-21-06 | Competency hearing set for January 2007 |
| 01-26-07 | Court cancels hearing, conducts status conference |
| 03-13-07 | Fourth defense counsel moves to withdraw |
| 03-22-07 | Motion to withdraw denied |
| 03-23-07 | Competency hearing set for April |
| 04-05-07 | Motion to substitute defense counsel |
| 04-09-07 | Motion to substitute granted, fifth counsel appears |
| 05-03-07 | Stipulated order appointing expert for competency evaluation |
| 12-20-07 | Status conference held |
| 01-03-08 | Defense motion for psychiatric/psychological exam |
| 02-15-08 | Competency hearing set for April |
| 04-10-08 | Competency hearing continued |
| 04-29-08 | Status conference held |
| 04-29-08 | Show cause order for defense counsel's failure to appear |
| 05-06-08 | Defense counsel found in civil contempt for failure to appear |
| 06-19-08 | Show cause hearing concerning defense counsel |
| 06-19-08 | Status conference held |
| 07-01-08 | Stipulated order appointing expert for competency evaluation |
| 12-02-08 | Competency hearing set for December |
| 12-17-08 | Competency hearing |
| 12-22-08 | Sentencing |

(Doc. 31, Exhibit 1).

On December 24, 2008, the defendant waived an identity hearing. On May 21, 2009, an order of commitment to another district was signed by a magistrate judge in the District of New Mexico. (Doc. 12). As noted, the defendant was arraigned on July 1, 2009. On July 17, he filed the instant motion.

The prosecutors in this case made efforts to resolve it while the New Mexico proceedings remained pending. In October 2004, they discussed with their New Mexico counterpart the possibility of a disposition of any federal Alabama charges pursuant to Rule 20, but defense counsel reported that her client was not interested "and would deal with the SDAL charges in due time." (Doc. 31, ¶ 6). The instant indictment was handed down on June 24, 2005. The government sought and received a writ of habeas corpus ad presequendum in October 2005, but arraignment was postponed by the Magistrate Judge when he was informed the defendant had an active case in New Mexico and his custodian would not release him until after sentencing, then scheduled for November 2005. (Docs. 4-7). In January 2006, the government sought and received a second writ, which was returned unexecuted as the defendant remained in federal custody in New Mexico awaiting sentencing, then set for April 2006. The Court was advised that the defendant would be sent to the District as a warrant of removal after initial appearance. (Docs. 8-11).

Following indictment, the prosecutors continued to discuss with their New Mexico counterpart the possibility of a Rule 20 disposition, and he discussed that possibility with multiple defense attorneys. "The Defendant was aware of the pending federal charges in the SDAL," yet at no time before the present motion was filed did the defendant demand a speedy trial or complain of delay. (Doc. 31, ¶ 11; *id*. at 8-9).[2]

---

[2]The defendant has submitted without comment the transcript of his December 2008 sentencing. The prosecutor therein states that he stopped pursuing a Rule 20 disposition, but only after the "lengthy proceedings related to competency" began. (Doc. 21, Exhibit 1 at 17). Those proceedings began in March 2006, long after the present

For Sixth Amendment analysis, the Court considers: (1) the length of delay from accusation to trial; (2) the reason for the delay; (3) the defendant's assertion of a speedy trial right; and (4) the prejudice to the defendant.  A delay of over one year is generally considered presumptively prejudicial and requires the Court to consider the additional factors.  *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006).  Because the delay here is over four years, it must be considered presumptively prejudicial.  *E.g., id.* (two-year delay was presumptively prejudicial); *accord United States v. Knight*, 562 F.3d 1314, 1323 (11th Cir. 2009) (delay of almost two years was presumptively prejudicial).  The government suggests that the "highly unusual circumstances" of this case warrant a finding that the four-year delay is not presumptively prejudicial, (Doc. 31 at 8), but it offers no authority or analysis that could support such a conclusion.

Because the first factor is satisfied, the Court must consider the remaining three factors.  Initially, however, the Court must complete its analysis of the first factor.

"[O]nce the Sixth Amendment's speedy trial analysis is triggered, it is appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the Government."  *Ingram*, 446 F.3d at 1339.  Here, the conduct for which the defendant was indicted occurred in April 2003, and the defendant was not indicted until June 2005, more than two years later.  The question is whether this pre-indictment delay was itself "inordinate."  As noted, the defendant was arrested on an outstanding federal warrant within four days of the first offense charged in this case.  It is conceivable that the defendant's usage of two false names hindered the effort to make a case, but his true identity was known within days of his arrest[3] and, once his identity was

---

indictment.  The transcript does not undermine the government's assertion that the defendant knew of the indictment.

[3]The false name the defendant used at the time of his April 26 arrest was found on his person at his April 30 arrest, (Doc. 31, ¶ 2), connecting the defendant with the April 26 incident.  From tattoos and photographs supplied by the Marshal, the defendant's true identity was established within five days of his Washington County arrest.  (*Id*., ¶¶ 2-3).

established, it would require very little to make the case.[4] The government has not explained why the prosecutors did not open a file until 16 months after the charged incidents occurred. It suggests, without so stating, that it did not pursue an indictment once the file was opened because the prosecutors were attempting to develop a Rule 20 disposition, but Rule 20 requires an indictment, information or complaint in order to proceed. Based on the information provided, the Court finds that the delay between April 2003 and July 2005 was inordinate and that it compounds the four-year post-indictment delay. The first factor thus weighs against the government.

With respect to the second factor, "[p]erhaps the most important reason for the delay of one criminal prosecution is to permit the prosecution of other criminal cases that have been in process longer than the case delayed." *Dickey v. Florida*, 398 U.S. 30, 52 (1970) (Brennan, J., concurring). This is especially so when the prior case is pending in another district, because "a defendant cannot be tried in different districts at the same time." *United States v. Jones*, 91 F.3d 5, 8 (2nd Cir. 1996) (citing *Beavers v. Haubert*, 198 U.S. 77, 86 (1905)). "A defendant must not only be present in court during the trial, but his presence is also needed during pretrial conferences and arguments on motions and hearings. The Probation Department, as well as doctors conducting psychiatric and physical examinations, may need access to him. Moreover, for an incarcerated defendant, each appearance in another district requires a transfer between jails." *Id*. Thus, "[w]e do not believe the time [the defendant] was involved in pre-trial, trial, and sentencing proceedings should be regarded as prosecutorial delay"; rather, "[i]t was reasonable to delay the prosecution of the [second] case until the [first] proceedings had ended." *Id*. In short, delay pending resolution of other criminal charges, as well as time spent processing

---

[4]At the time of his April 30 arrest, officials found a receipt for the April 28 purchase of a firearm from E-Z Money Gun & Pawn Shop in Jackson. (Doc. 31, ¶ 2). By that time, authorities knew from the New Mexico charges that the defendant was a convicted felon, so the information and incentive to determine whether he had lied in order to purchase the firearm was already in existence.

extradition papers, "are neutral reasons not attributable to the government." *Id*. (internal quotations omitted); *see Barker v. Wingo*, 407 U.S. 514, 531 (1972) (only those circumstances as to which "ultimate responsibility ... must rest with the government rather than with the defendant" are weighed against the government); *cf. United States v. O'Bryant*, 775 F.2d 1528, 1532 (11th Cir. 1985) (under the Speedy Trial Act, delay "resulting from trial with respect to other charges against the defendant" is excludable, including delays from incarceration pending appellate proceedings).

This case falls well within *Jones*. Throughout the four years between indictment and initial appearance, the defendant was engaged in a criminal prosecution two thousand miles away and was incarcerated in connection therewith. By the Court's reckoning, the parties filed some 55 motions, the majority by the defendant.[5] There was of course a pre-sentencing report, and competency proceedings to boot. Thus, every circumstance the *Jones* Court noted as supporting its conclusion that awaiting the termination of other criminal proceedings is reasonable and does not support a Sixth Amendment violation is present in this case. As to the final six months between sentencing and initial appearance, most was consumed awaiting the New Mexico court's transfer and so is comparable to the time spent processing extradition papers that *Jones* says is neutral for Sixth Amendment purposes.

Nor did the government sit passively by. Instead, it sought the defendant's return to this district to face charges but was rebuffed by the defendant's custodian in the reasonable belief he would soon be sentenced. That he was not is largely the defendant's own doing, since he filed an apparently meritless motion to set aside his guilty plea and, after it was denied, obtained three continuances of sentencing (twice on his motion and once to accommodate his desired change of counsel). Only after these tactics were exhausted, some 17 months after his plea, did he first suggest the need for a competency

---

[5]At sentencing, the District Judge stated the defendant had been "in court with me many times, many times more than ... have most defendants." (Doc. 21, Exhibit 1 at 30).

evaluation, and afterwards he apparently did little to prepare for such a hearing despite multiple court orders paving the way and multiple status conferences pushing it.  At sentencing, the District Judge repeatedly expressed "frustration" with defense counsel's lackadaisical pursuit of the competency angle, and she concluded that the defendant "has successfully delayed disposition of this case through numerous changes of counsel and motions," all "calculated to achieve an objective."  (Doc. 23, Exhibit 1 at 27-29, 39).  That is, the defendant deliberately slowed down the judicial machinery for his own ends, a conclusion with which the Court concurs.

In short, the reason for the delay does not weigh in favor of the defendant.

With respect to the third factor, "[t]he more serious the deprivation, the more likely a defendant is to complain."  *Barker*, 407 U.S. at 531.  Thus, "[w]e emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."  *Id*. at 532.  As noted, the defendant was aware of these proceedings from their inception in 2005, yet he never voiced a concern for his Sixth Amendment rights until after he was arraigned.  Such conduct is inconsistent with a serious assertion that his constitutional rights have been violated.  When a defendant knows of his indictment for years but never invokes his right to a speedy trial, the third factor "would be weighed heavily against him."  *Doggett v. United States*, 505 U.S. 647, 653 (1992); *accord United States v. Spaulding*, 322 Fed. Appx. 942, 947 (11th Cir. 2009).  Such is the situation here.

If the first three factors weigh heavily in the defendant's favor, the defendant need not show actual prejudice under the fourth factor.  *Ingram*, 446 F.3d at 1336.  Here, the third factor weighs heavily against the defendant and the second is at best neutral.  Accordingly, the defendant is required to demonstrate actual prejudice.

The defendant's skeletal motion asserts that, due to the delay, he is unable to "secure witnesses in his defense," whom he identifies by name. (Doc. 23, ¶ 6).  The defendant does not explain how these witnesses could aid his case, and it is apparent that they would be unfriendly.  According to the government, three of them witnessed the

defendant fire the Smith & Wesson on April 26, 2003, which would pretty well convict him of Count One, and the fourth was with him when he purchased the Glock, which would tend to inculpate him on Counts Two and Three. Nor has the defendant articulated the efforts he has made to locate these witnesses. The defendant's showing is, in a word, inadequate. *United States v. Schlei*, 122 F.3d 944, 988 (11th Cir. 1997) (defendant failed to show actual prejudice due to witness's death when he "never contacted [the witness] to determine whether his testimony would have been material to his defense"); *United States v. Greer*, 655 F.2d 51, 53-54 (5th Cir. 1981) (finding "no credible basis" for the defendant's assertion that a key witness had experienced a loss of memory); *United States v. Taylor*, 306 Fed. Appx. 492, 494 (11th Cir. 2009) ("Taylor has not produced any evidence of prejudice from the delay. Without such evidence, Taylor's claim fails."); *Martin v. Secretary, Department of Corrections*, 262 Fed. Appx. 990, 995 (11th Cir. 2008) (defendant did not establish actual prejudice "primarily because he alleged no facts and introduced no evidence showing that his defense was impaired by the delay").

Even could it be assumed that the witnesses could have provided favorable testimony but are no longer available to do so, the result presumably would be the same. As noted, the defendant has known of this indictment for four years, so he has had every incentive to locate witnesses throughout that time. Instead, just as he declined to insist on his speedy trial rights, he declined to line up his defense. It would make little sense to hold (as the Supreme Court has held) that a knowing failure to assert the Sixth Amendment renders it difficult to establish a constitutional violation, yet also hold that a simultaneous knowing failure to secure witnesses establishes actual prejudice sufficient to compensate for the failure to raise the constitutional issue. *See United States v. Edwards*, 577 F.2d 883, 889-90 (5th Cir. 1978) (for purposes of actual prejudice under *Barker*, "[w]e simply refuse to accept the contention of the defendant that even though he was arrested and formally charged with the offense in question, he had no duty to begin to locate and interview potential alibi witnesses until after he was indicted thirteen months

later."). As in the Speedy Trial Act context, a defendant who knows of the indictment "may demand an immediate trial or he may simply bide his time and hope for the best." *United States v. Pena-Corea*, 165 F.3d 819, 821 (11th Cir. 1999). The defendant may have hoped, but the best his studied inattention affords is rejection of his constitutional claim.

For the reasons set forth above, the defendant's motion to dismiss is **denied**.

DONE and ORDERED this 21st day of August, 2009.

<u>s/ WILLIAM H. STEELE</u>
UNITED STATES DISTRICT JUDGE